## The County Board of Education v. Hensley.

(Decided March 8, 1912.)

### Appeal from Harlan Circuit Court.

1. Infants—Contracts By.—Where an infant has conveyed land for a reasonable price, representing at the time that he was of age, and has thereby induced the grantee to part with the consideration, the trade being fairly made, and the grantee having no notice that the grantor was under age, the infant will be bound by his deed.

2. Same.—The rule denying relief to an infant is not restricted in its operation to his misrepresentations; it applies equally to his fraudulent concealments concerning his infancy.

3. Infants—Estoppel.—Where one deals with an infant, knowing him to be an infant, the latter is not estopped from relying upon his infancy in avoidance of the contract; but, when an infant, by reason of his personal appearance, family surroundings and business activities, leads one, who, in good faith deals with him, coupled with a misrepresentation or fraudulent concealment concerning his infancy, and not knowing his infancy, to believe that he is of age, the infant will be estopped from maintaining an action to avoid his executed contract.

G. A. EVERSOLE and GEORGE R. POPE for appellant.

H. C. CLAY for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

On July 9, 1907, the trustees of Common School District No. 1, in Harlan County, the predecessor of the

appellant, bought three and one-half town lots in Mt. Pleasant or Harlan Town, from the appellee, John H. Hensley, for school purposes. The agreed purchase price was $400 in cash, but there being a vendor's lien upon this and other property for $300, that amount of the purchase money was appropriated to the discharge of the lien, which was released by the vendor on the same day. On September 12, 1910, Hensley brought this suit for the purpose of canceling his former deed, and to recover the property, upon the ground that he was an infant when he made the conveyance on July 9, 1907. Hensley alleged that he was born on December 10, 1886; and, if that be true, he did not reach his majority until December 10, 1907, which was five months after he executed the deed. Appellant presented these defenses; (1) it denied that Hensley was an infant when he made the deed; (2) it charged that he was over twenty-one years of age, or that he falsely represented himself to be over twenty-one years of age at the time he executed the deed: and (3) that he stood by and saw appellant build a school house upon the lot at a cost of $500 without objection or protest, and that he is thereby estopped from now relying upon his infancy.

The chancellor granted the relief prayed; directed the cancellation of Hensley's deed to the school trustees, and a restoration of the property; and from that judgment the defendant prosecutes this appeal.

Hensley's father and mother have been dead for many years. Upon the question of his infancy the weight of the proof is with Hensley; indeed, the only specific testimony upon that point was by his grandfather and an uncle by marriage, who established the date of Hensley's birth as December 10, 1886. There is no direct testimony contradicting them. It appears, however, that Hensley was a married man, with two children, and from all appearances was more than twenty-one years of age.

Furthermore, he had been engaged in business upon his own account for several years, trading in real estate and live stock. He had sold his farm which he inherited from his father, and bought the town lots now in controversy, and other lots, from Grant Smith on April 6, 1907, about three months before he made the conveyance to the School Board. In 1906 and 1907 the sheriff of the county had collected a poll tax from appellee. He says

he had probably voted in political conventions, though never in a primary election. All of these facts were well and generally known in the community.

When Turner Howard, the school trustee who made the purchase from Hensley, asked Hensley if there was anything that would prevent him from making a good deed to the lot, Hensley answered that there was nothing except a part of the purchase price which constituted a lien on the lot; whereupon Howard said the trustees would pay that and have the lien released. Hensley claims that he paid the money himself, and that it was not paid by the school board. This, however, is immaterial, since it is evident that the purchase by the school trustees and the release by Howard were contemporaneous transactions, and that $300 of the trustees's purchase money was used in the discharge of the lien.

While there may be some conflict upon the question in other jurisdictions, it is well settled in this State that where an infant has conveyed land for a reasonable price, representing at the time that he was of age, and has thereby induced the grantee to part with the consideration, the trade being fairly made, and the grantee having no notice that the grantor was under age, the infant will be bound by his deed. And, the rule denying relief to the infant is not restricted in its operation to his misrepresentations; it applies equally to his fraudulent concealments.

In Schmitheimer v. Eiseman, 7 Bush, 300, this court said:

"Neither infancy or coverture can excuse parties guilty of fraudulent concealment or misrepresentation, for neither infants nor femes covert are privileged to practice frauds upon innocent persons. (1 Story's Equity, p. 385; 8 B. Mon., 543; 14 B. Mon., 513.)"

In the late case of Asher v. Bennett, 143 Ky., 363, this court, in speaking of the foregoing rule, said:

. "The rule is simply an application of the equitable doctrine that he who misleads another by his solemn assertion of a fact will not be allowed to assert the contrary to the prejudice of the person whom he has thus misled, and so perpetrated a fraud upon him. It will not be applied where the grantee knows that the grantor is an infant, or where, from his appearance, situation, or other circumstances, as a reasonably prudent man, he should know it. It will only be applied when necessary

to protect the grantee from what would otherwise be a fraud." Bailey v. Barnberger, 11 B. M., 113; Ingram v. Ison, 26 Ky. Law Rep., 48; Harris v. Ronk, 32 Ky. Law Rep., 966; Pace v. Cawood, 33 Ky. Law Rep., 592; 100 S. W., 414; Edgar v. Gertison, 112 S. W., 831; Sackett v. Asher, 112 S. W., 833; Phillips v. Williams, 114 S. W., 119; and Asher v. Bennett, 143 Ky., 362, are to the same effect.

From these cases, the rule in this State, is so far as it is applicable to the facts of this case, may be stated as follows: When one deals with an infant, knowing him to be an infant, the latter is not estopped from relying upon his infancy in avoidance of the contract; but when an infant by reason of his personal appearance, family surroundings, and business activities, coupled with a misrepresentation or fraudulent concealment, leads one who deals with him, in good faith, and not knowing that he is an infant, to believe that he is of age, he will be estopped from maintaining an action to avoid his executed contract. When he comes into equity seeking relief, he must come with clean hands. The privilege of infancy is a shield for the protection of the infant, and not a weapon of attack; nor is it to be used as a means of defrauding others.

The school trustees did not know that Hensley was a minor; and, on the other hand, Hensley contends that he did not represent to them that he was of age. We are of opinion, however, that the answer made to Howard, wherein Hensley stated that there was no reason against his making a good title to the property except the purchase money lien, was, in effect, a representation that he was not disqualified by infancy, or otherwise from making a good title. It was an intentional concealment of the truth, when it was his duty to speak. Hensley knew he was not then of age, and good faith required that he should have answered the question, not only truthfully, but fully, and in the sense and scope he knew it had been asked. This he failed to do, and in so failing, brought himself squarely within the rule above laid down. He is estopped from now showing that the facts were different from what he then represented them to be.

The judgment is reversed, with instructions to dismiss the petition.